**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

TREVOR L. YOUNG, JR.,

      Plaintiff,

v.                                                                         Case No. 22-C-1519

VINCENT LOPEZ, et al.,

      Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

---

Defendants Vincent Lopez and Jeffrey Sullivan, by their attorneys, Tearman Spencer, City Attorney, and Clint B. Muche, Assistant City Attorney, hereby submit this memorandum in opposition to Plaintiff's motion for summary judgment, and in support of their cross-motion for summary judgment.

## INTRODUCTION

Plaintiff claims that the Defendants, in their capacity as City of Milwaukee police officers, seized his motor vehicle without probable cause on January 19th, 2021, and complains that they refused to release it unless he came to them for an interview -- but admits that it was released after the trial was complete. For the reasons discussed below, Defendants are entitled to summary judgment because Plaintiff cannot prove that Defendants violated his civil rights and cannot overcome the defense of qualified immunity.

## UNDISPUTED MATERIAL FACTS

### I.      The Murder Investigation

Christopher Miller was found dead inside his car in a parking lot on January 6th, 2020. (Defendants' Reply to Plaintiff's Proposed Findings of Fact And Additional Proposed Findings of Fact ("DPFOF") ¶ 29). Surveillance footage showed that the Camry arrived in the lot around 4:25 p.m. on December 29, 2020, shortly before a black, four door Audi, with tinted windows and no front or rear license plate. (DPFOF ¶ 30-31). The driver of the Audi entered the Camry's front passenger seat, moved between both vehicles, and then drove away in the Audi around 4:30 p.m. (DPFOF ¶ 32). Officers concluded Miller was shot by the driver of the Audi. (DPFOF ¶ 33).

Miller's phone records showed thirteen calls on the afternoon of December 29th, 2020 from a phone number linked to Trevor Young, Jr., but none after 4:30 p.m. (DPFOF ¶ 34). Officers also learned that Plaintiff had been previously stopped while driving a black, four door, 2005 Audi A6, and that he lived in an apartment building on West Capitol Drive. (DPFOF ¶ 35).

## II.    Defendants Had Plaintiff's Car Towed

On the afternoon of January 19th, 2021, Defendants searched the neighborhood near Plaintiff's apartment and found a black, four door, 2005 Audi A6 with tinted windows parked on North 23rd Street. (DPFOF ¶ 36). The Audi had an expired temporary registration taped to its back window, and no front license plate. (DPFOF ¶ 37). Defendants arranged for the Audi to be towed to the City of Milwaukee Tow Lot. (DPFOF ¶ 38).

## III.    Defendants Obtained a Warrant to Search Plaintiff's Car

Around 9:30 a.m. the following morning (January 20, 2021), the Milwaukee Circuit Court granted a warrant to search the Audi for evidence related to the Miller's homicide. (DPFOF ¶ 48). Assistant District Attorney Sara Beth Hill had reviewed the search warrant application and affidavit in support prepared by Detective Lopez, and prepared a motion to seal

to be filed concurrently. (DPFOF ¶ 47). After the warrant issued Milwaukee police officers, including Lopez and Sullivan, processed the car for evidence collecting DNA samples and finger print lifts, as well as physical evidence like the holster and paperwork addressed to Plaintiff. (DPFOF ¶ 37, 39, 49).

### IV.     Contacts Regarding Plaintiff's Car

Someone, likely Plaintiff, called District 7 about the Audi after it was towed, around 3:30 p.m., on January 19th, 2021, but neither named defendant spoke with this caller. (DPFOF ¶ 54-55). A woman ("Kayla") called the detectives bureau about the Audi at 4:20 p.m. the same afternoon. (DPFOF ¶ 56). Defendant Sullivan called Kayla on January 20th, January 21st, and January 23rd. (DPFOF ¶ 57). When Sullivan called Kayla on January 23rd, Plaintiff took the phone and spoke to him for the first time since the Audi had been towed. (DPFOF ¶ 58). Plaintiff called the detectives bureau within the next half hour and spoke with Defendant Lopez. (DPFOF ¶ 59). Both officers told Plaintiff that they wanted to interview him about an incident involving the Audi before it could be released. (DPFOF ¶ 60).

Plaintiff contacted Defendant Sullivan about the car again on February 25th, 2021, and Sullivan told him the same thing. (DPFOF ¶ 61). On April 14, 2021, Plaintiff called Sullivan again and told him that he did not want to be interviewed by detectives but would turn himself in on Friday, April 16, 2021. (DPFOF ¶ 62). Plaintiff never turned himself in; he was arrested during a traffic stop in Milwaukee on April 21, 2021. (DPFOF ¶ 63).

### V.     Plaintiff's Conviction and Current Claims

Plaintiff was convicted of first-degree reckless homicide in the death of Christopher Miller in Milwaukee Circuit Court, Case No. 2021CF1587. (DPFOF ¶ 78). Plaintiff filed a *pro se* complaint on December 16, 2022 (ECF 1) and an amended complaint on April 12, 2023 (ECF

15). Upon screening Plaintiff's Amended Complaint, the Court found sufficient grounds for only Count I – Unlawfully Seizing and/or Retaining Personal Property. (ECF 16).

ARGUMENT

### I. Legal Standards

#### A. Standard for Summary Judgment

At summary judgment, a party must show that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir. 1990). An issue of material fact exists when there is sufficient evidence for a jury to return a verdict for the opposing party. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). In conducting its analysis, courts must draw inferences in favor of the non-moving party, but only if they are reasonable. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir. 1989).

Because a plaintiff has the burden of proof at trial, a defendant can seek summary judgment by highlighting the absence of the plaintiff's evidence instead of evidence that affirmatively disproves the plaintiff's claims. *Madrowski v. Pigatoo*, 712 F.3d 1166, 1168 (7th Cir. 2013) To survive summary judgment, the non-movant must respond with evidence that could satisfy its trial burden. *Id.* at 1168.

#### B. Standard for Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Whether qualified immunity applies is a question of law to be resolved by the Court. *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004). Qualified immunity is, "immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). Thus, courts must resolve questions of immunity, "as early as possible in the proceedings[.]" *McCann v. Mangialardi*, 337 F.3d 782, 785-86 (2003).

Once a defendant-officer has raised qualified immunity as a defense, the plaintiff bears the burden to establish his or her rights were violated <u>and</u> that the law concerning the claimed right was clearly established at the time of the alleged violation. *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (emphasis added). Qualified immunity does not apply if, "a reasonably competent official would know that [his] conduct was unlawful in the situation he confronted." *Id*.

## II. Defendants Are Entitled To Summary Judgment Because Towing The Car Was Reasonable Under The Circumstances, And Retaining It As Evidence Was Lawful.

There is no dispute that Defendants Lopez and Sullivan caused Plaintiff's 2005 Audi to be towed on January 19, 2021, and lodged an evidence hold against it. Plaintiff alleges that defendants violated his Fourth Amendment right against unreasonable seizures because they lacked probable cause to seize his vehicle, and unlawfully refused to return it unless he spoke with them first.

The defendant-officers had probable cause to believe evidence related to a homicide investigation could be found inside the car when it was initially seized. They diligently sought and obtained judicial approval in the form of a warrant to search the following morning. Even if they lacked probable cause, the defendants are entitled to summary judgment based on qualified immunity because they had sufficient, independent cause to tow based in city ordinance.

Furthermore, by the time defendants spoke with the Plaintiff, a warrant had issued and they had discretion to lawfully hold it as evidence. Conditioning its release upon Plaintiff's participation in a voluntary interview was consistent with their authority to hold property as evidence, or release it if no longer necessary.

Summary judgment is warranted when a plaintiff fails to establish any element of his claim upon which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Here, Plaintiff must show sufficient facts upon which a reasonable jury could conclude that these defendants unreasonably seized or unlawfully retained his property to survive summary judgment. *Hanson v. Dane County, Wis.,* 608 F.3d 335, 338 (7th Cir. 2010) ("[The Fourth Amendment] protects people against 'unreasonable' searches and seizures"). Defendants are entitled to summary judgment herein because Plaintiff cannot demonstrate that the initial seizure or subsequent retention of his property was unreasonable under the circumstances.

### A. Defendants Lawfully Seized Plaintiff's Vehicle Based Upon Probable Cause To Believe It Likely Contained Evidence Related To The Homicide Investigation, Or Independent Legally Sufficient Grounds.

Property is seized whenever "there is some meaningful interference with an individual's possessory interests in [their] property." *Soldal v. Cook County, Ill*., 506 U.S. 56, 61 (1992) (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)). Causing a vehicle to be towed constitutes a seizure within the meaning of the Fourth Amendment. *Id*. However, the Fourth Amendment only prohibits <u>unreasonable</u> seizures of property by government actors. *Id*. (emphasis added). Although seizure without a warrant is generally disfavored, temporarily seizing personal property without a warrant is not unreasonable so long as probable cause exists to believe that it is or contains evidence of a crime and officers do not unreasonably delay in seeking a warrant.

*See U.S. v. Burgard,* 675 F.3d 1029, 1032 (7th Cir. 2012) (finding six-day delay between temporarily seizing property and seeking a warrant not unreasonable).

Probable cause depends on the facts and circumstances known to officers at the time of the seizure. *See U.S. v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000). Probable cause to seize property exists when the known facts would warrant a man of reasonable prudence to believe that it is or contains evidence of a crime. *U.S. v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009). It does not require certainty, but only a good reason to act. *Hanson v. Dane County, Wis.*, 608 F.3d 335, 337-38 (7th Cir. 2010). Whether evidence is later found, or not, does not affect the probable cause calculus. *See generally Fleming v. Livingston County, Ill.*, 674 F.3d 874, 875, 880 (7th Cir. 2012) (holding evidence that charges were ultimately dropped has no bearing upon whether arguable probable cause supported seizure at the time of the arrest).

In January 2021 the defendant-officers, and other members of the Milwaukee Police Department, were investigating a homicide that occurred in a parking lot. Surveillance footage from near the scene showed the victim pull into the lot shortly before a black, door Audi arrived around 4:25 p.m. on December 29, 2020. Video showed the driver of the Audi entering the victim's passenger door before ultimately driving away from the scene in the Audi. The victim's phone records revealed numerous calls between the victim and a phone number linked to Plaintiff. They also learned that Plaintiff previously had been stopped by Greenfield police driving a black, four door Audi, and had reason to believe he lived in an apartment on West Capitol Drive.

Around 1:30 p.m. on January 19, 2021, Defendants saw Plaintiff's Audi parked near his apartment, on North 23rd Street, and requested that it be towed. This vehicle, like the Audi seen in the surveillance video had tinted windows and no front or back license plate. It had an expired

temporary registration taped to the back window registered in Plaintiff's name. They followed the vehicle to the city tow lot, conducted an inventory search, and requested that it be held as evidence.

The next morning Defendant Lopez prepared search warrant application materials, including an affidavit summarizing the facts and circumstances developed in the course of the homicide investigation, and presented them for review to ADA Hill. Defendant Lopez subsequently submitted the application materials to Court Commissioner Barry Phillips, who approved the warrant at 9:31 a.m. Commissioner Phillips granted the motion to seal as well. Thereafter officers processed the car and its contents taking photos, collecting DNA and fingerprint samples, and recovering physical evidence connecting Plaintiff to the car and the car to the shooting.

The facts and circumstances known to officers on January 19th, 2021, established probable cause to believe evidence related to the homicide investigation could be found inside the car. Defendants had reason to believe that a fatal shooting had occurred, that Plaintiff was involved, and that he had traveled to and from the scene in his black Audi. It was reasonable to believe that they would find additional evidence inside linking Plaintiff to the vehicle and to the murder inside the car. They diligently sought – and obtained – judicial approval less than twenty-four hours after the tow occurred. *See Illinois v. McArthur*, 531 U.S. 326, 331 (2001) ("[W]hen police act with diligence [to obtain a warrant], courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary."). Their temporary, warrantless seizure was not unreasonable under the totality of the circumstances. *U.S. v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008).

The initial seizure (i.e. tow) could also be justified on legal grounds separate from the homicide investigation. Milwaukee City Ordinances, Chapter 101, Section 101-24.7 provides that police officers may, "cause any unregistered motor vehicle located upon any … street … within the city to be removed to a suitable place of impoundment. When the defendants caused Plaintiff's car to be towed it was parked on a city street, with an expired (temporary) registration tag. Thus, the tow itself did not violate Plaintiff's civil rights.

**B. Plaintiff Has No Cognizable Constitutional Claim Related To Unlawful Retention Of His Vehicle, But Defendants Failure To Release It Was Lawful In Any Event.**

Although the Fourth Amendment secures the right to be free from unreasonable seizures, it cannot be invoked by the already-dispossessed owner to regain his property. *See Bell v. City of Chicago*, 835 F.3d 736, 741 (7th Cir. 2016). Instead, claims related to the handling or disposition of seized property arise under the Fourteenth Amendment. *See Pierner-Lytge v. Mitchell,* 412 F. Supp. 3d 1012, 1022 (E.D. Wis. 2019), *citing Lee v. City of Chicago*, 330 F.3d 456, 465-66 (7th Cir. 2003). But, Fourteenth Amendment claims for deprivation of property are not actionable under Section 1983 when adequate state remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Even in the case of intentionally taken property, such as here, "[u]nauthorized deprivations of property violate the [Fourteenth Amendment's] due-process clause only when no post-deprivation procedures are available." *Morris v. Scott*, 840 F. App'x 14, 15 (7th Cir. 2021), *citing Hudson v. Palmer,* 468 U.S. 517, 533 (1984) and *Wynn v. Southward*, 251 F.3d 588, 592-93 (7th Cir. 2001). Wisconsin law provides several tort remedies for dispossessed owners of personal property, including Wis. Stat. §§ 893.35 (action to recover personal property after wrongful taking, conversion or wrongful detention); 893.51 (action for damages resulting from wrongful taking, conversion or wrongful detention of personal property); and 893.52 (action for

damages from injury to property). *See generally Cole v. Litscher*, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) ("[The state of Wisconsin] provides several post-deprivation procedures for challenging the taking of property."). Wisconsin Statutes, Section 968.20, is perhaps most directly applicable to the facts alleged:

> Any person claiming the right to possession of property frozen or seized … or seized pursuant to a search warrant or seized without a search warrant … may apply for its return to the circuit court for the county in which the property was seized ….

Wis. Stat. § 968.20(1).

Plaintiff has not availed himself of these state law remedies, nor alleged that these state remedies were inadequate. (ECF 15). Therefore, any constitutional claim based in due-process related to the retention of his car is fatally deficient. *Turley v. Rednour*, 729 F.3d 645, 653-54 (7th Cir. 2013).

Nonetheless, Plaintiff's brief focuses primarily upon Defendants failure to release his vehicle after he called and so Defendants will respond directly. (ECF 47). Section 968.19 of Wisconsin Statutes directs that, "[p]roperty … validly seized without a warrant … shall be safely kept by the officer … so long as necessary for the purpose of being produced as evidence on any trial." Section 968.20, subpart 2, provides, "[p]roperty not required for evidence or use in further investigation …may be returned by the officer …." Thus, upon issuance of the warrant, the defendants were not only authorized, but required to hold the Audi as evidence unless it became unnecessary to their investigation or at trial. Because Plaintiff first spoke with the Defendants on January 23, 2021, after the warrant had issued, their refusal to release it without interviewing him first was both reasonable and lawful under the circumstances.

The Audi might have become unnecessary to the investigation or at trial if Plaintiff had confessed to the shooting, or presented facts establishing an alibi during an interview.

Defendants did not violate Plaintiff's civil rights by telling him that they needed to interview him before releasing the car, but he complains that they tried "to force him to speak with them by using his vehicle as leverage." (ECF 47).

Even if this were entirely accurate, it does not establish any violation of Plaintiff's civil rights. Plaintiff was free to decline to speak with officers, but it does not follow that they were forbidden to offer the potential return of the car as incentive to talk. *See generally United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001) ("Trickery, deceit, even impersonation do not render a confession [involuntary]."); *United States v. Ceballos*, 302 F.3d 679, 694-95 (7th Cir. 2002) (holding law enforcement agents may 'actively mislead' suspects so long as their statements are voluntary). Plaintiff's remedy if he neither wanted to talk with defendants, nor believed his car was lawfully held by them was to file a motion for return of property in the Milwaukee County Circuit Court. *See* Wis. Stat. 968.20(1).

### C. The Individual Defendants Are Entitled To Summary Judgment Based On Qualified Immunity In Any Event.

In the context of a Fourth Amendment claim, officers may be entitled to qualified immunity if the seizure was supported by "arguable probable cause." *Burritt v. Ditelfsen*, 807 F.3d 239, 249 (7th Cir. 2015). Arguable probable cause exists when, "a reasonable officer could have mistakenly believed that probable cause existed." *Fleming*, 674 F.3d at 880. Defendants Lopez and Sullivan are entitled to qualified immunity, based on arguable probable cause, if they, "reasonably, albeit possibly mistakenly, believed that probable cause [to seize Plaintiff's car] existed." *See generally Burritt*, 807 F.3d at 249, *quoting Fleming*, 674 F.3d at 880. To the extent that the reviewing court subsequently approved the warrant application relative to Plaintiff's car, one must conclude, at a minimum, that they reasonably (even if mistakenly) believed probable cause to tow existed.

In the same vein, Defendants are entitled to qualified immunity concerning so much of Plaintiff's claim as relates to their retention of the car after he called because Plaintiff cannot establish any clearly established constitutional right to release of property upon demand. Defendants conduct was arguably required under state law, and thus they could not have known their conduct was unlawful. *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (holding qualified immunity does not apply if, "a reasonably competent official would know that [his] conduct was unlawful in the situation he confronted.").

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's motion for summary judgment, and grant Defendants' cross-motion for summary judgment.

Dated at Milwaukee, Wisconsin on this 11th day of March, 2024.

TEARMAN SPENCER
City Attorney

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Tel: (414) 286-2601
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov

*Electronically signed by:*

/s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629
*Attorneys for Defendants*

1032-2023-928:290286