UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TREVOR L. YOUNG, JR.,

      Plaintiff,

      v.                                Case No. 22-C-1519

VINCENT LOPEZ, and JEFFREY SULLIVAN,

      Defendants.

---

## DECISION AND ORDER

---

Plaintiff Trevor L. Young, Jr., who is representing himself, is proceeding on a Fourth Amendment claim in connection with allegations that Defendants Vincent Lopez and Jeffrey Sullivan seized his vehicle without probable cause on January 19, 2021, then retained it longer than reasonably necessary as a way of forcing him to talk with them about a homicide for which he was later charged and convicted. Dkt. Nos. 15-16. The parties filed cross-motions for summary judgment. Dkt. Nos. 46 & 51. Because the record conclusively establishes that Defendants lawfully seized Plaintiff's vehicle on January 19, 2021, and because the continued possession of properly seized property does not violate the Fourth Amendment, the Court will grant Defendants' motion, deny Plaintiff's motion, and dismiss this case.

### FACTS

On January 6, 2021, Christopher Miller was found shot to death inside a 1994 Toyota Camry in a parking lot in Milwaukee. Dkt. No. 81, ¶29. Surveillance footage from the parking lot showed Miller arriving in the lot on December 29, 2020, at around 4:25 p.m. Dkt. No. 56, ¶30. A few minutes later, a black four door Audi with tinted windows arrived and parked next to Miller.

*Id.*, ¶31. The driver of the Audi left his car, entered the front passenger seat of the Camry, moved between both vehicles, then left in the Audi around 4:30 p.m. *Id.*, ¶32. Through investigation, Defendants concluded that Miller was shot by the driver of the Audi between 4:25–4:30 p.m. on December 29, 2020. *Id.*, ¶33. Miller's phone, which was recovered from the Camry, showed thirteen calls on the afternoon of December 29 with a phone number ending in 6319, which was "linked" to Plaintiff through calls previously made to his girlfriend and mother, but none after 4:30 p.m. *Id.*, ¶34; *see also* Dkt. No. 56-1 at 4, ¶¶8–12. Defendants also learned that Greenfield police had previously stopped Plaintiff, on August 28, 2020, while driving a black, four door, 2005 Audi A6, and that he lived in an apartment building on West Capitol Drive. Dkt. No. 56, ¶35; *see also* Dkt. No. 53, ¶11.

  A few weeks later, on January 19, 2021, Defendants saw a black, four door, 2005 Audi A6 with tinted windows parked on North 23rd Street, near Plaintiff's apartment. Dkt. No. 56, ¶36. Believing that the Audi parked on the street that day belonged to Plaintiff and was also the same Audi in the surveillance video from the parking lot on December 29, Defendants arranged for the vehicle to be towed to the City of Milwaukee Tow Lot as evidence from a homicide. *Id.*, ¶¶38 & 44. Defendants also placed an "evidence hold" on the vehicle pending their application for a search warrant. *Id.* The following morning, on January 20, 2021, Defendant Lopez presented a search warrant application and affidavit to the district attorney for review. *Id.*, ¶47. That same day, at 9:31 a.m., Milwaukee Circuit Court Commissioner Barry Phillips approved the search warrant. *Id.*, ¶¶48 & 50. Defendants assert that they acted in good faith and without any malice when they placed an evidence hold on Plaintiff's vehicle and temporarily seized it as evidence in a homicide investigation. *Id.*, ¶¶44, 52, 77. They contend that they reasonably and in good faith believed the vehicle was used to arrive at and flee the scene of the homicide. *Id.*

2

Case 1:22-cv-01519-WCG   Filed 09/24/24   Page 2 of 9   Document 89

During this same period, after January 19, 2021, when Plaintiff's vehicle was seized, Plaintiff did not know where his vehicle was, so he called several local tow lots and discovered that his vehicle was the subject of an evidence hold. *Id.*, ¶6. Plaintiff eventually got a hold of Defendants on the phone, and they told him that they wanted to speak with him about a homicide and that they could not release the vehicle until they spoke with him because it was evidence in a homicide. *Id.*, ¶¶7–9. Plaintiff offered for Defendants to come to his home to speak to him because they had just seized his primary mode of transportation. *Id.*, ¶10. That offer was rejected, however, and Defendants stated that they would only talk to Plaintiff at the police station. *Id*. A few days later, on April 21, 2021, Plaintiff was arrested for a separate parole violation based on allegations by the mother of his child about matters unrelated to the homicide. Dkt. No. 82, ¶¶17–19, & 25. The mother of the child eventually recanted her allegations, and an Administrative Law Judge found him not guilty of the parole violations, but Defendants allegedly used the parole investigation to attempt to talk to him. *Id.*, ¶¶20-23, & 32-34. Plaintiff was eventually found guilty of the homicide by a jury. Dkt. No. 56-15. Plaintiff's vehicle was released from state custody after that jury trial because it was no longer needed as potential evidence in the trial. Dkt. No. 56, ¶¶75 & 77.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of

3

the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants contend that they are entitled to summary judgment because they lawfully seized Plaintiff's vehicle on January 19, 2021, on the ground that it was likely to contain evidence of a homicide. They promptly sought and obtained a search warrant authorizing their search of the vehicle, and then retained the vehicle, consistent with Wis. Stats. §§968.19 & 968.20, until after conclusion of the homicide trial. Dkt. No. 52. Based on these facts, Defendants argue they are entitled to summary judgment dismissing Plaintiff's claim.

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects (including vehicles) against unreasonable searches and seizures. *See Soldal v. Cook Cnty., Ill*., 506 U.S. 56, 61 (1992). In general, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment . . . unless . . . accomplished pursuant to a judicial warrant.'" *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). An officer may temporarily seize property without a warrant, however, if he has "probable cause to believe that a container holds contraband or evidence of a crime" and "the exigencies of the circumstances demand it or some other recognized exception to

4

the warrant requirement is present." *Place*, 462 U.S. at 701; *United States v. Burgard,* 675 F.3d 1029, 1032 (7th Cir. 2012). One of the recognized exceptions is the plain view doctrine. Under the plain view doctrine, property may be seized by a law enforcement officer without a warrant when the officer is lawfully in the place where the property is located, and the incriminating character of the property is immediately apparent. *Horton v. California*, 496 U.S. 128, 142 (1990); *Minnesota v. Dickerson*, 508 U.S. 366, 374–75 (1993).

Upon applying these principles to the undisputed facts of this case, it is clear that the defendants' motion should be granted. Probable cause depends on the facts and circumstances known to officers at the time of the seizure. *See United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir. 2000). Probable cause to seize property exists when the known facts would warrant a man of reasonable prudence to believe that it is or contains evidence of a crime. *United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009). It does not require certainty, but only a good reason to act. *Hanson v. Dane County, Wis.*, 608 F.3d 335, 337–38 (7th Cir. 2010). Whether evidence is later found, or not, does not affect the probable cause calculus. *See Fleming v. Livingston County, Ill.*, 674 F.3d 874, 875, 880 (7th Cir. 2012) (holding evidence that charges were ultimately dropped has no bearing upon whether arguable probable cause supported seizure at the time of the arrest).

The record establishes that Defendants had probable cause to seize his vehicle on January 19, 2021, as likely to contain evidence of a homicide. Surveillance video from the parking lot where the homicide occurred showed the driver of a black four door Audi exit his own vehicle, enter the victim's vehicle during the timeframe when the victim was shot in his car, then leave in the same black four door Audi he came in. The victim's phone revealed numerous calls between the victim and a phone number linked to Plaintiff in the afternoon when the homicide occurred, which ceased almost immediately once the victim was dead. And Defendants also discovered that

5

Case 1:22-cv-01519-WCG Filed 09/24/24 Page 5 of 9 Document 89

Plaintiff, one of the individuals whose number was in the victim's phone log in the afternoon he got shot, drove a black four door Audi.

Based on these facts, Defendants had probable cause to believe that Plaintiff used his black four door Audi to arrive at, commit, then flee a homicide; and that evidence from that homicide (such as firearms/ammunition used to commit the crime, DNA from the victim, fingerprints, cell phones, and other identifiers) might still be inside his car. It thus follows that Defendants' seizure of Plaintiff's car from where it was parked on a public street without a warrant was lawful. Further, the very next morning, on January 20, Defendants presented a search warrant application with a supporting affidavit authorizing the search of Plaintiff's vehicle, and Commissioner Phillips issued the warrant at 9:31 a.m. that same day. *See* Dkt. No. 56-1 at 1. Defendants thus did not unreasonably delay in acquiring the search warrant. Under these circumstances and as a matter of law, Defendants reasonably seized Plaintiff's vehicle on January 19, 2021, consistent with the requirements of the Fourth Amendment.

Plaintiff's main grievance appears to be that his vehicle should have been released once it was processed and Defendants "unreasonably" retained the vehicle for too long, allegedly to force him to talk to them. *See* Dkt. Nos. 47 & 64. Plaintiff also notes that Defendants allegedly violated their own internal policies and procedures, along with Wisconsin state law, in retaining his vehicle. *See* Dkt. No. 82, ¶¶39–45. Under *Lee v. City of Chicago*, however, Plaintiff has no Fourth Amendment claim with respect to how long Defendants retained his seized property. 330 F.3d 456, 466 (7th Cir. 2003). Indeed, "[o]nce an individual has been meaningfully dispossessed [of his property], the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable." *Id*. "The [Fourth] amendment then cannot be invoked by the dispossessed owner to regain his property." *Id*. While "it is axiomatic that property once seized, but no longer

needed, should at some point be returned to its rightful owner," *id.*, the Seventh Circuit has expressly rejected the notion that a seizure can be "continuous" and "any Fourth Amendment theory predicated on the defendants' continued possession of the personal property is without merit," *see Waldon v. Wilkins,* 400 F. App'x 75, 80 (7th Cir. 2010) (citing *Lee,* 330 F.3d at 466). Further, to the extent Defendants allegedly violated their own internal policies and procedures and/or Wisconsin state law, that does not constitute a constitutional violation. A state's failure to follow, or erroneous application of, its own laws does not implicate the federal right of due process and is not actionable under §1983. *Davis v. Scherer*, 468 U.S. 183, 194–96 (1984); *Wells v. Caudill*, 967 F.3d 598, 602 (7th Cir. 2020).

Plaintiff briefly raises several other arguments. He notes that his personal phone number ends in 3722 (not 6319). *See* Dkt. No. 81, ¶34; *see also* Dkt. No. 82, ¶49. He states that his personal number is nowhere on the victim's call log, so the 6319 number could not be used to establish probable cause to seize his vehicle. *See id*. Defendants, however, have established that they had good reason to believe that Plaintiff was "linked" to the 6319 number because he had used that number in the past to make phone calls to both his girlfriend and his mother. Dkt. No. 56-1 at 4, ¶¶8–12. That Plaintiff's own personal phone number does not appear on the victim's call log does not undermine probable cause when a different phone number he was credibly believed to have used in the past was in the call log.

Plaintiff states that it is unfair that the victim's vehicle (where the homicide actually occurred) was released to next of kin *before* the trial while his vehicle (where none of the victim's DNA was found) was retained until *after* the trial. Dkt. No. 56, ¶¶14 & 16. He states that Defendants should not have been allowed to retain his vehicle that contained no evidence to force him to talk to them. But neither of these circumstances, which occurred *after* the seizure,

7

undermine probable cause.  As the Seventh Circuit has noted, "poor judgment"—even making "threats" to arrest an individual after properly seizing their property or hiking up taxes and fees to make it more difficult to regain the property—does not make the seizure "unreasonable."  *See Waldon*, 400 F. App'x at 80.  Plaintiff's vehicle was properly seized on January 19, 2021, and any circumstances that occurred *after* that date, including the alleged lack of DNA evidence found in his vehicle, does not undermine probable cause.  Plaintiff argues that the search warrant approved by Commissioner Phillips on January 20,2021, only allowed for the "search" of his vehicle, not its "seizure."  *See* Dkt. No. 82, ¶¶36–38.  But the warrant clearly allows Defendants to "search" the vehicle and "take possession thereof."  *See* Dkt. No. 56-1 at 1.

The remainder of Plaintiff's arguments involve his claim of innocence—that he did not (and could not) drive his vehicle on the day of the homicide; that he was at his grandfather's house playing chess at the time of the homicide; that the police theory of the case was inconsistent with blood splatter, wound entry, and the location of DNA on the victim's vehicle; that the black Audi in the surveillance video was not his black Audi; and that returning the victim's vehicle to the next of kin before the trial constituted a discovery violation because Defendants had a duty to "preserve" that allegedly exculpatory evidence.  *See* Dkt. No. 56, ¶¶20-28; *see also* Dkt. No. 82, ¶¶28-31.  Plaintiff is free to assert claims of innocence on a direct appeal of his state court conviction, on a postconviction motion in state court, or in petition for federal *habeas corpus* under 28 U.S.C. § 2255.  But he cannot assert those claims in a §1983 lawsuit unless his state conviction for the homicide has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486–87

8

(1994). The Court will therefore grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED**; Plaintiff's motion for summary judgment (Dkt. No. 46) is **DENIED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 24th day of September, 2024.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge